UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

UNITED STATES OF AMERICA

VS.

ROBERT E. "RED" STEVENS &
ARTHUR GILMORE, JR.

CRIMINAL NO. 10-00200-02

CHIEF JUDGE JAMES

MAGISTRATE JUDGE HAYES

## GOVERNMENT'S IN GLOBO RESPONSE TO DEFENSE MOTIONS

Comes now the United States of America, by and through the undersigned Assistant U. S. Attorneys, who respectfully submits this *in globo* response to GILMORE's "Motion to Reconsider the Court's Denial of Previously Filed Rule 14 Motion to Sever,"[1] GILMORE's "Motion in Limine to Exclude Prejudicial Portions of Taped Conversations That the Government Intends to Use at Trial; Or, Alternatively, Supplemental Pleadings in Support of Mr. Gilmore's Motion for Reconsideration of the Court's Denial of His

---

[1]Docket No. 63.

Rule 14 Motion for Severance,"[2] and STEVENS' "Adoption of Gilmore's Motion in Limine to Exclude Prejudicial Portions of Taped Conversations."[3]

Defendants submit the same arguments in support of both their motions for severance and their motions in limine to exclude alleged prejudicial portions of taped conversations.  The Government will therefore address all three motions simultaneously.

As this Court is well aware, the Defendants' Motion To Sever has already been addressed and denied accordingly.[4]  However, in doing so, the Court invited the Defendants to file a motion in limine if they wished the Court to consider specific, allegedly prejudicial statements.  The Defendants have now done so.

Before addressing each specific portion of the recordings to which the Defendants object, the Government will address the general law pertinent to each category of objection.  It should be noted that the Defendants' objections primarily relate to statements made by their respective co-defendant, rather than statements made by the Cooperating Witness (CW). To the extent that the objections relate to statements made by the CW, the

---

[2]Docket No. 64.

[3]Docket No. 67.

[4]Docket No. 54.

Government relies on and directs the Court's attention to its "Memorandum of Law Regarding Admission of Recorded Statements of the Cooperating Witness."[5]

I.   Confrontation Clause.

To implicate the Confrontation Clause, the witness must be "unavailable" to testify at trial. *See Crawford v. Washington,* 541 U.S. 36, 68, 59 124 S.Ct. 1354 (2004). Because one defendant cannot call another defendant, the unavailability element is present. The second prong of a Confrontation Clause analysis requires a testimonial statement. This requirement is fatal to the Defendants, as "surreptitious recordings are not testimonial." *United States v. Claville*, 2008 WL 914490, *2 (W.D.La. Apr. 1, 2008). *See also*, Docket No. 54, pp. 8-9.

II.   Hearsay.

The statements of the Defendants are not hearsay. To the contrary, the statements are clearly admissible as statements of co-conspirators. To be sure, even in the absence of a conspiracy charge, the statements are still admissible as co-conspirator statements. Indeed, statements are admissible as co-conspirator statements even when the parties are engaged in what is

---

[5]Docket No. 59.

more properly termed a "joint venture."  *United States v. Saimiento–Rozo*, 676 F.2d 146 (5th Cir. 1982) ("However, it is not necessary that the conspiracy upon which admissibility of these statements is predicated be the conspiracy charged . . . .  Nor need the conspiracy or agreement be criminal in nature; it may be in the form of a joint venture.") (citations omitted) and *United States v. Barksdale–Contreras*, 972 F.2d 111, 115 (5th Cir. 1992) ("Indeed, the admission of evidence is valid even in the absence of a conspiracy charge, as long as the proof showed a joint venture.") (citation omitted).

GILMORE claims that this is inappropriate because there is no conspiracy charged, however case law holds otherwise.  *See United States v. Postal*, 589 F.2d 862, 886, fn. 41 (5th Cir. 1979).  He also contends that the statements did not further the conspiracy (or joint venture).   To the contrary, because the purpose of the venture was the advancement of the CW's projects with the corresponding enrichment of the Defendants, the statements do, in fact, further the venture.

III.   Federal Rule of Evidence 403.

Rule 403 limits the use of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." F.R.E. 403, Notes of the Advisory Committee.

All "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae,* 593 F.2d 700, 707 (5th Cir. 1979). "The balance under the Rule ... should be struck in favor of admissibility." *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992) ("[T]he court's discretion to exclude evidence under Rule 403 is narrowly circumscribed.  Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence....") (citation omitted) (internal quotations omitted). "[T]he application of Rule 403 must be cautious and sparing." *Id.*  The Rule's major function

> is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.  As to such, Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance.  It is not designed to permit the court to "even out" the weight of the

evidence, to mitigate a crime, or to make a contest where there is little or none.

*Id.*

## IV.   Right to a Fair Trial.

Although the Defendants frequently object to the recordings based on a generalized "right to a fair trial," they fail to cite a specific right that is allegedly being violated.   The Government cannot respond to such a barebones, unsupported allegation.   Therefore, it will simply address the issues that the Defendants specifically enumerate – hearsay, Confrontation Clause, and unfair prejudice.

### GILMORE's Specific Objections

First and foremost, it should be noted that GILMORE relies on an initial draft of the transcripts.   These drafts have been periodically replaced with updated versions.   If the current, final version differs significantly from what GILMORE attached to his motion, it will be noted.

Objection # 1 - The Defendant objects to these statements on the basis of unfair prejudice under Rule 403.   However, the Government has already indicated to Defendants that it does not intend to play this portion of exhibit 8.

Objection # 2 - The Defendant objects on Confrontation Clause grounds, as well as his right to a fair trial.  As with objection number 1, the Government has already indicated to Defendants that it does not intend to play this portion of exhibit 8.

Objection # 3 - The Defendant objects on hearsay and prejudice grounds.  Once again, the Government has already indicated to Defendants that it does not intend to play this portion of exhibit 8.

Objections # 4 & 5 - The Defendant objects on Confrontation Clause grounds, as well as his right to a fair trial.  These two portions of the conversation should be considered together, as they are part of a larger conversation during which the CW and STEVENS discuss the CW's plan to develop a subdivision on what is referred to as the Sherrouse Plantation property.  With GILMORE'S two requested sections excised, much of the remaining conversation will be meaningless.

As noted, one of the Defendant's objections to this portion of the conversation is based on the Confrontation Clause.  However, as previously discussed, STEVENS' statements are not testimonial, nor are the CW's, as set forth in the Government's "Memorandum of Law Regarding Admission of Recorded Statements of the Cooperating Witness."

Although GILMORE does not claim that these statements are prejudicial, the Government would point out that even if he does allege that, the statements are not unduly prejudicial.  In fact, the very next day, on March 26, 2008, the CW has a call with GILMORE, which the jury will hear. In that call, the CW says "long time no hear from you."  GILMORE responds, "Yeah, I told, my wife asked me this morning, you heard from . . . [CW]?  No, I ain't called him back yet."  Thus, the statement to which GILMORE objects in number four, specifically, that GILMORE never returned the CW's call, is confirmed by GILMORE himself.  Continuing, the CW then says "I durn sure don't want her mad at me.  You better get your closet for her."  GILMORE states, "You got that right."  (A closet for Mrs. Gilmore is a running reference to the house that GILMORE wants to build at CW's Sherrouse Plantation development.)  This exchange between GILMORE and the CW is similar to STEVENS' statements in Defendant's objection number 5.

The last part of the conversation to which the Defendant objects in objection number 4 is a reference to the CW's need for GILMORE to rezone the property.  This, too, cannot be considered unduly prejudicial.  The jury will hear many conversations between the CW and GILMORE discussing assistance that the CW is requesting from GILMORE, including an oblique

reference to it in the March 26, 2008, phone call and a full discussion in a March 27, 2008, lunch meeting between the CW and GILMORE.

Objection # 6 - The Defendant objects on Confrontation Clause grounds, as well as his right to a fair trial.  As noted above, GILMORE is using an outdated version of the transcript.  The portion to which he objects has been updated to read:

> STEVENS:   Alright, well I appreciate being involved.  I know you stay on, on the go.
>
> CW:          I, I try to.  That way, that way I stay out of trouble.

GILMORE should have no objection to this.

Objection # 7 -  The Defendant  objects on Confrontation Clause grounds, as well as his right to a fair trial.  A little background is needed to put this conversation in context.  STEVENS called the CW and told the CW that he (STEVENS) was about the travel to Washington, D.C.  STEVENS then complained that he would have to sit in his hotel room because he lacked sufficient funds to dine out.  In response, the CW offered him money.  When STEVENS accepted the offer, the CW traveled to City Hall and met STEVENS in front of the building.  The Mayor and GILMORE were also standing out front.   In  the  portion  of  the  conversation  to  which  GILMORE  objects, STEVENS is simply stating that GILMORE never questioned why the CW was at City Hall.  In no way can this be construed as prejudicial to GILMORE.

Further, as previously discussed, there is no Confrontation Clause problem with statements of STEVENS.

Objection # 8 - The Government has already indicated to Defendants that it does not intend to play this portion of exhibit 33.

Objection # 9 - The Government has already indicated to Defendants that it does not intend to play this portion of exhibit 53.

Objection # 10 - The Defendant objects on Confrontation Clause grounds, as well as his right to a fair trial.  In this portion of the conversation, the CW is simply asking STEVENS when a certain project should be brought before the City Council for a vote.  The project that is referenced is the project to develop the area where GILMORE wants to build a house.  For the reasons set forth previously, this conversation does not violate the Confrontation Clause.

To the extent that GILMORE may claim prejudice from this statement, the Government notes that by the time the jury will hear this particular conversation, they will have already heard conversations between CW and GILMORE about GILMORE's desire to build a house on the property.  This will include a video from April 3, 2008, where GILMORE and his wife walk around the property and discuss how and where they want their house to

be situated.  The April 3, 2008 property tour occurred eight months before the conversation to which the Defendant objects.

Objection # 11 - The Defendant objects on Confrontation Clause grounds, as well as his right to a fair trial.  This conversation is a continuation of the conversation on which the preceding objection is based. Here, the CW tells STEVENS that in order to build the development on the Sherrouse Plantation property, the property needs to be annexed, a high fence needs to be approved, and roads need to be undedicated.  He then mentions that GILMORE is going to help because GILMORE wants to build in the development.

As noted in response to objection number 10, these statements violate neither the Confrontation Clause, nor the Defendant's right to a fair trial. Also as noted in response to objection number 10, by the time the jury hears these statements, they will already know from GILMORE's own lips that he "wants to be in there."  In addition, the jury will have heard the CW tell GILMORE that his assistance is needed with the fence issue, as well as for the undedication of roads.  GILMORE then accepted $1,000 in cash from the CW with the CW saying "all I ask for is a fair shake and you do something for me."   GILMORE's response was, "no problem."   This conversation occurred on March 27, 2008.

Then, at the April 3, 2008, meeting at the Sherrouse property, after Mrs. Gilmore leaves, GILMORE and the CW ride around the area in the CW's vehicle.  The CW tells GILMORE that an acre of land costs $450,000, but GILMORE will be allowed to set his own price–"20, 30, 10, it don't matter cause I need you to help me get the rezonings . . ."  GILMORE's response is, "okay."

After the conversation to which the Defendant objects, GILMORE meets with the CW and picks out a lot which costs, at a minimum, $173,178.00.  GILMORE later relays that he will pay between $5,000 and $10,000 for this lot.  It is clear that the CW is willing to accept such a low price for the lot because of what GILMORE, by virtue of his City Council position, will do in return.

Objection # 12 - The Defendant objects on hearsay and Confrontation Clause grounds.   This conversation is a continuation of the same conversation that forms the basis of the objections in numbers 10 and 11. For the reasons set forth above, the Confrontation Clause is not implicated. Further, it is not hearsay as to STEVENS because his own statements are statements by a party-opponent, and the CW's statements are not hearsay because they are not offered for the truth of the matter asserted, as discussed more fully in the Government's "Memorandum of Law Regarding

Admission of Recorded Statements of the Cooperating Witness."  Also, for the reasons set forth above, the statements are not hearsay as to GILMORE. They further the joint venture to get the CW's projects approved by the City Council so that the two Defendants can be enriched.  Here, Stevens is clearly advising the CW of the best way to present the project for Council approval. Finally, the statements cannot be deemed unduly prejudicial to GILMORE given all of the evidence set forth in objection number 11.

<u>Objection # 13</u> - The Government has already indicated to Defendants that it does not intend to play this portion of exhibit 65.

<u>Objection # 14</u> - The Defendant objects on hearsay, Confrontation Clause, relevancy, and prejudice grounds.  As noted above, GILMORE is using an outdated version of the transcript.  The portion to which he objects has been updated to read

STEVENS:   Well...

CW:             ...you don't know why he does what he does.

STEVENS:   Well, now you're right, I don't and, and I don't know, Robert grandstands a lot and but...

CW:             But that's, but that's him.

STEVENS:   But you know, and, and that's what the scriptures say, if you, if you want to be a friend you must first show yourself friendly.

This change should resolve all of GILMORE's objections except relevancy.  To the extent that it does not, the Government would rely on the arguments it has made above and the "Memorandum of Law Regarding Admission of Recorded Statements of the Cooperating Witness."

The referenced conversation is relevant because STEVENS and the CW are discussing the difficulties that the CW has had getting various projects approved by the City Council.  The CW will testify that these difficulties were the reason he was instructed to begin paying bribes to GILMORE and STEVENS.  There is no undue prejudice, as this is not the type of evidence that will inflame the jury.

Objection # 15 - The Defendant objects on hearsay, Confrontation Clause, relevancy, and prejudice grounds.  The referenced conversation relates to the appointment of an interim City Council member following Robert Johnson's resignation.   As discussed above, there is no Confrontation Clause violation.  Further, the statements are not hearsay because STEVENS' own statements are admissible against him as statements of a party-opponent, while the CW's statements are not offered for the truth of the matter asserted.  The statements are not hearsay as to GILMORE for the reasons previously mentioned.  Because STEVENS and the CW discuss the appointment of an interim Councilman who will, in due course, have a

vote on the CW's projects, these statements further the joint venture to obtain the City Council's approval of the CW's projects so that, ultimately, the two Defendants can be enriched.  Finally, there is no undue prejudice, as this is not the type of evidence that will inflame the jury.

Objection # 16 - The Defendant objects based on the Confrontation Clause, as well as his right to a fair trial.  As in objection number 15, the referenced conversation relates to the appointment of an interim City Council member following Robert Johnson's resignation. For the reasons set forth above, there is no Confrontation Clause violation. In addition, the only part of the conversation that refers to GILMORE is fairly innocuous-- it notes that he seemed to be on board with the appointment of the new member. Thus, the conversation is not unduly prejudicial.

Objection # 17 - The Defendant objects on the basis of relevancy, hearsay, and unfair prejudice.  At the outset, the Government notes that GILMORE is not even referenced in this phone call.  Prior to the call, STEVENS met with the CW seeking money to help pay bills arising from his daughter's illness.  The purpose of this particular call is to arrange a time when STEVENS can pick up the $3,000 the CW has for him.  STEVENS then expresses his gratitude.

The evidence is extremely relevant, as this is one of the bribe payments with which STEVENS is charged.  Because GILMORE is not even mentioned during this phone call, there can be no hearsay issue or prejudice to him.  To the extent that GILMORE is concerned about any carryover effect the evidence may have, this can be adequately addressed through the jury instructions.

Objection # 18 - The Defendant objects on the basis of hearsay, relevancy, and the Confrontation Clause.  The Government has already advised Defendants that it does not intend to play this entire recording.  Specifically, the Government does not intend to use 102-001, 102-002 (lines 1 - 3), 102-004 (lines 3 - 32), 102-005 (lines 19 - 35), 102-006, 102-007, 102-008 (lines 1 - 17), 102-015 (line 35), 102-016, 102-017, 102-018, 102-019 (lines 1 - 19), 102-020 (lines 30 - 35), 102-021, 102-023 (lines 18 - 35), 102-024, 102-025 and 102-026.

This conversation takes place during a meeting between STEVENS and the CW.  In this meeting, the CW gives STEVENS the $3,000 mentioned in objection number 17.  They also discuss the upcoming City Council election, City politics, and the matters that the CW needs approved or acted on by the City Council.  The conversation is clearly relevant, as the $3,000 payment is one of the charged predicate offenses.  It will be clear to the jury that

STEVENS needs to deliver these things because of the monies that he has received, including the $3,000 he obtained during this very meeting.

For the reasons previously discussed, the admission of this conversation does not violate the Confrontation Clause.  Likewise, the statements are not hearsay as to GILMORE because they are in furtherance of the object of the joint venture-- advancing the CW's projects while enriching Defendants.

To further flesh out the hearsay objections, the Government notes that the only references to GILMORE are on pages 3, 10, 11, 14, 19 and 20, 22 and 23 (of Defendant's exhibits).  Page 3 simply contains a reference to the fact that GILMORE always goes to Destin with the DA's convention.  This statement is made in response to the CW's indication that he/she will soon travel to San Destin, Florida.  Page 10 merely contains a comment that Mayor Mayo is aware that the CW is friends with GILMORE and STEVENS.  Given the numerous meetings and phone calls that the jury will have heard by this point, such a statement cannot be unduly prejudicial.

On page 11, the CW comments that the Sherrouse Plantation property roads will not be undedicated without STEVENS' and GILMORE's assistance.  Given that this statement has been made repeatedly to both STEVENS and GILMORE, this is also not unduly prejudicial.  On page 14, in a discussion of

the same project, the CW states that he/she knows GILMORE is on board and that GILMORE and STEVENS need to speak up for the CW at the Council. By the time this recording is introduced, the jury will have already heard a February 12, 2009, meeting during which GILMORE selects his lot in the proposed subdivision.  GILMORE knows he will be allowed to set the price he wants to pay for the otherwise $173,178.00 lot, in exchange for addressing the CW's needs before the City Council.  In other words, the jury will already know that GILMORE is "on board."  Therefore, the comment is not unfairly prejudicial.

The references to GILMORE on page 18 include the CW's comments that he/she is glad to have GILMORE and STEVENS there for him/her at the City Council.  Through the previous calls and meetings, the CW's gratitude will already be patently obvious; therefore, there is no prejudice.  The second reference to Gilmore on page 18 is that the new Councilman is an attorney; thus, he and GILMORE will work well together.  This is not a prejudicial statement.  The last reference on this page is that Councilman Katz will seek STEVENS' and GILMORE's opinion, a statement to which STEVENS agrees.  Again, this is not prejudicial.

On page 20, STEVENS relays that GILMORE became angry with him when he voted against a project in GILMORE's district.  This is relevant

because STEVENS tells the CW that GILMORE's actions are arbitrary and harmful to the City.  This shows, in part, why the CW had the belief that the two Defendants needed to be bribed in order to accomplish his business goals in the City of Monroe.

On page 22, the CW states that he would not be able to get anything done without GILMORE's and STEVENS' help because, without them, he/she would stand alone against the City Council.  Given that this type of statement has been made repeatedly to both STEVENS and GILMORE-- and the jury will have already heard similar statements-- this cannot be deemed unduly prejudicial.

On page 23, the CW says that after the architect returns his/her plans, he/she wants to meet with both STEVENS and GILMORE.  This is not hearsay, not only for the reasons set forth above, but also because it is not offered for the truth of the matter asserted.  Rather, it is a statement about a desired meeting in the future.

Objection # 19 - The Defendant objects on hearsay, relevancy, and Confrontation Clause grounds.  The Government's response to the hearsay and Confrontation Clause arguments is the same as set forth above.  With respect to relevancy, the Government submits that this conversation is extremely relevant since STEVENS just accepted one of the bribe payments

with which he is charged.  There is no prejudice relative to GILMORE since he is not even mentioned during this conversation.  To the extent that he is concerned about any carryover effect, this can be adequately addressed through the jury instructions.

Objection # 20 - The Defendant objects on hearsay, relevancy, and Confrontation Clause grounds.  The Government's response to the hearsay and Confrontation Clause arguments is the same as previously discussed. With respect to the portions of the conversation mentioning that STEVENS, GILMORE, and the CW are friends, this will not be a surprise to the jury.  To the contrary, after the numerous meetings and phone calls that will have been reviewed by this point, a fleeting and innocuous reference to these friendships cannot be found to be prejudicial.  Similarly, the reference to the Mayor is not prejudicial to GILMORE, and it is needed to put the next part of the conversation in context.  The discussion regarding the timing of bringing the Sherrouse property before the City Council is extremely relevant, as STEVENS had just accepted a $3,000 payment from the CW and the Sherrouse property is one of the items the CW needed STEVENS to handle with the City Council.

Objection # 21 - The Defendant objects on the basis of hearsay, relevancy, and the Confrontation Clause.  The Government's response to the

hearsay and Confrontation Clause arguments is the same as previously discussed.  These statements are extremely relevant because they confirm that Monroe is very cliquish, making it difficult for a project to be approved by the City Council on its merits.

Objection # 22 - The Defendant objects on the basis of hearsay, relevancy, and the Confrontation Clause.  As the Government has previously indicated, it does not intend to play lines 31 through 35.  The Government's response to the hearsay and Confrontation Clause arguments is the same as previously discussed.

As in objection number 20, the statements are extremely relevant because they again confirm that Monroe is cliquish and that projects are not necessarily approved based on what is best for the City.

Objection # 23 - The Defendant objects on the basis of Confrontation Clause, hearsay, as well as his right to a fair trial.  The Government's response to the hearsay and Confrontation Clause arguments is the same as previously discussed.   Furthermore, by this point in the trial, the jury will already know that GILMORE is receiving a handsome discount, arguably a windfall, on the property in question.  Therefore, the mere reference in line 7 to "the project for Arthur" is not prejudicial.   The statements are

unquestionably relevant because they show that all the CW has to do is ask for help and these two Defendants will immediately respond.

Objection # 24 - The Defendant objects on the basis of the Confrontation Clause, hearsay, unfair prejudice, and relevancy.  The Government's response to the hearsay and Confrontation Clause arguments is the same as previously discussed.

This is highly relevant evidence as to STEVENS, as it is one of the charged predicate offense where STEVENS clearly solicited a bribe.  GILMORE is not even mentioned during this portion of the conversation.  If GILMORE is concerned of any carryover effect the evidence may have, this issue can be cured by appropriate jury instructions.

## STEVENS' Specific Objections

Although Defendant STEVENS individually objects to several portions of the recordings intended to be used at trial, his motion fails to explain the basis for each objection.  Rather, he simply notes that he objects for the same general reasons as set forth in GILMORE's motion.  With that understanding, the Government can provide only a generalized response to said objections.

Objection # 1, pages 5 & 6 - By the time this particular portion of the recording is played, the jury will already know that STEVENS did, in fact,

make a call on the CW's behalf and take care of the issue for the CW. Indeed, STEVENS spoke to the relevant City official during a February 28, 2008, luncheon meeting with the CW.  During the call, STEVENS gave the CW the "thumbs up" sign.  Thus, there is no undue prejudice.  The conversation with GILMORE is relevant, as it shows that he is monitoring the CW's transactions before the City.

Objection # 1, page 21 - As with the previous objection, by the time this recording is played, the jury will know that the CW helps STEVENS because STEVENS helps the CW.  In fact, as previously mentioned, STEVENS made the February 28, 2008, phone call garnering the "thumbs up" sign during the same meeting in which he accepted $1,000 from the CW.

Objection # 1, page 23 - As with the previous two objections, by the time this recording is played, the jury will know that STEVENS is a friend of the CW's.  As mentioned above, STEVENS made the February 28, 2008, phone call during the same meeting in which he accepted $1,000 from the CW.  There is no prejudice here.

Objection # 1, page 24 - The bulk of the conversation on page 24 is being introduced to put the pertinent statements into context.  Nonetheless, as in the previous objections, the reference to the fact that STEVENS helps

the CW will only come after the jury has heard STEVENS make the February 28, 2008 phone call and observed STEVENS take $1,000 from the CW.

Objection # 1, page 27 - The first line is not prejudicial because the jury has already heard the CW talk to STEVENS during the February 28, 2008, meeting about the zoning of the referenced property.  During the remainder of the conversation, the CW simply starts to talk about STEVENS' and GILMORE's help, however, he is interrupted by GILMORE.  The CW then mentions the I-20 project that would not have been approved without STEVENS' and GILMORE's assistance.  GILMORE does not dispute this, as evidence by the discussion on the very next page.  Furthermore, as the jury will know, during the February 28, 2008 luncheon, STEVENS specifically asked the CW what the CW needed STEVENS to do to assist with the I-20 property.

Objection # 1, pages 41 & 42 - As with all of the other statements, by the time the jury hears this portion of the conversation, they will have already heard STEVENS offer to set up a meeting between the CW and the Mayor to help them resolve their differences.  There can be no prejudice.

Objection # 1, page 51 - As with the other statements, by the time the jury hears this portion of the conversation, they will have already heard STEVENS both solicit and receive money from the CW.  Further, the CW will

have testified already that Summit Printing routinely handled the printing needs of both Defendants.   Thus, this brief reference is not unduly prejudicial.

Objection # 1, page 53 - The Government has already notified the Defendants that it does not intend to play this portion of the conversation.

Objection # 2, pages 4 & 5 - Similar to the majority of the other statements at issue, by the time the jury hears this conversation, they will have already twice heard STEVENS solicit and receive money from the CW-- $1,000 the first time and $500 the second.  On both occasions, the CW made it clear that in exchange for the money, STEVENS' assistance is needed.

Objection # 3, page 4 - The CW's statement that "[STEVENS'] helping me down there" is a general statement, rather than a reference to a specific project.  By the time the jury hears this conversation, they will already know that STEVENS has received three payments from the CW totaling $2,300.  On each occasion, the CW made it clear that he needs something from STEVENS in return.  With respect to the CW's statement that "[STEVENS has] never failed me . . .," this, too, is not unduly prejudicial, as the evidence will have already established STEVENS' willingness to act on behalf of the CW.

Objection # 3, pages 13 & 14 - This conversation is about the Sherrouse property.  As noted above, by the time this portion of the

conversation is played, STEVENS has already accepted a total of $2,300 from the CW.  The jury will also have heard numerous conversations between STEVENS and the CW regarding assistance that the CW needs on the Sherrouse property.  Finally, the jury will know that STEVENS has a friend on the Board of Adjustments; indeed, STEVENS spoke to his friend on the CW's behalf during the February 28, 2008, luncheon.

Objection # 4, page 3 - This conversation is about the interim City Councilman.  By the time this portion of the recording is played, the jury will have heard STEVENS repeatedly boast to the CW that he (STEVENS) is getting the man he (STEVENS) wants into the City Council position.  Also, as noted above, by this time, STEVENS has accepted $2,300 in cash from the CW.

Objection # 4, page 4 - The statement to which the Defendant objects is not a statement about things that STEVENS has done in the past, but rather a statement that the CW wants to get together with STEVENS in the future.  Because the jury will have already heard STEVENS repeatedly accommodating the CW, this statement is not unduly prejudicial.

Objection # 5, page 4 - On the same day that the CW spoke with GILMORE about this subject, he also spoke to STEVENS.  STEVENS did, in fact, offer to talk to Eddie Clark on the CW's behalf.  Therefore, this

statement will be corroborated by other evidence and is not unduly prejudicial.

Objection # 6, page 5 - In this portion of the conversation, the CW and GILMORE discuss the fact that Dr. Reddix is running for Ouachita Parish Police Jury.  Due to the fact that the CW merely asked whether STEVENS supported Reddix and made no true substantive statements, the Government assumes that the Defendant objects to GILMORE's portion of the conversation.   However, for the reasons previously discussed, GILMORE's statements are not hearsay, nor do they violate the Confrontation Clause.

Objection # 7, page 10 - This is a conversation between the CW, GILMORE, and Reddix, during which the CW simply comments that STEVENS has always been good enough to help him/her.  By the time this portion of the recording is played, the evidence will have already established this fact. Indeed, the jury will have heard the same sentiments and willingness to help from STEVENS' own mouth before this particular recording is introduced.

Thus, for the foregoing reasons, the recorded statements should be admitted at the trial of these defendants.

Respectfully submitted this 21st day of April, 2011.

STEPHANIE A. FINLEY
United States Attorney

s/Mignonne Griffing

By:

C. MIGNONNE GRIFFING, #19601
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, LA  71101
318/676-3600
Mignonne.Griffing@usdoj.gov


s/ROBIN S. MCCOY (La. Bar. No. 30042)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
(318) 676-3600

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April, 2011, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

/s Mignonne Griffing
C. MIGNONNE GRIFFING, #19601
Assistant United States Attorney
300 Fannin St, Ste 3201
Shreveport, LA  71101
318/676-3630
Mignonne.Griffing@usdoj.gov

s/ROBIN S. MCCOY (La. Bar. No. 30042)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
(318) 676-3600