# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 10-00200-02 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ARTHUR GILMORE, JR. | MAG. JUDGE KAREN L. HAYES |

# RULING

Pending before the Court is Defendant Arthur Gilmore, Jr.'s ("Gilmore") Motion for Bail Pending Appeal [Doc. No. 250]. For the following reasons, Gilmore's motion is GRANTED.

## FACTS AND PROCEDURAL HISTORY

On June 23, 2010, Gilmore, along with Co-Defendant Robert E. "Red" Stevens ("Stevens"), was charged in an Indictment with one violation each of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count 1) and the Hobbs Act, 18 U.S.C. § 1951 (Count 2). The Indictment alleged that Gilmore and Stevens both used their positions as Monroe City Council members to extract bribes from a confidential informant, who was later identified as Eddie Hakim ("Hakim"), a Monroe businessman. Prior to seeking the Indictment, the Government had procured video and audio recordings of meetings between Hakim and each Defendant.

On November 12, 2010, Gilmore filed, among other motions, a Motion to Sever Trial of Defendant from Co-Defendant's Trial Because of Prejudicial Joinder ("Motion to Sever") [Doc. No. 37]. On the same day, Stevens filed a Motion to Adopt Motions of Co-Defendant [Doc. No. 36], which was granted by the Court [Doc. No. 43]. Thus, Stevens joined in all of Gilmore's motions. *See* [Doc. Nos. 44, 45 & 46].

On December 9, 2010, the Government filed an In Globo Response to Defense Motions [Doc. No. 48], responding, in part, to the Motion to Sever.

On January 7, 2011, Gilmore filed a Reply to Government's In Globo Response to Defense Motions [Doc. No. 52].

On March 3, 2011, the Court issued a Ruling [Doc. No. 54] denying Defendants' Motion to Sever, as well as other motions.  The Court rejected Defendants' arguments that the evidence was so clearly interrelated as to cause confusion to the jurors and that the introduction of recordings of a potentially non-testifying co-defendant about activities similar to those of the other defendant "creates a severe *Bruton* problem." [Doc. No. 37, p. 2]; *see Bruton v. United States*, 391 U.S. 123 (1968).  The Court found, first, that the jury, with proper instruction, could separate and consider the Government's case against each Defendant.  The Court also reviewed the text of the recordings and found that statements made by Stevens and Gilmore in their separate conversations with Hakim[1] were non-testimonial and thus did not violate the other Defendant's Sixth Amendment rights under the Confrontation Clause, as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004).  [Doc. No. 54].  The Court also found that Stevens' and Gilmore's statements were not confessions which facially inculpated the other Defendant and thus did not violate *Bruton*.  *Id.*  Finally, the Court found that statements by Hakim, the confidential witness, did not violate *Bruton*.  *Id.*

Trial was held between April 27 and May 10, 2011.  The Government presented testimony from Hakim and the video and audio recordings of Hakim's meetings and conversations with each Defendant.  Hakim testified that Stevens and Gilmore had accepted bribes from him, detailed the

---

[1]In its rulings on the pre-trial motions, the Court referred to Hakim as "the CW," but it was clear before trial that the only confidential witness in this case was Hakim.  The Court thus refers to Hakim by name in this ruling.

2

nature of the bribes, and testified as to the content of the recordings.  Stevens and Gilmore took the stand in their own defense, disputed Hakim's interpretation of the recordings, denied that they had accepted bribes, and offered their own explanations of the recordings.  During the trial the Court again considered and rejected, three additional times, Gilmore's arguments on severance.  *See* [Doc. Nos. 84 & 85; oral rulings rendered on April 29 and May 4, 2011].

At the conclusion of trial, the jury returned guilty verdicts against both Defendants on Counts 1 and 2.

Following trial, Defendants timely filed post-trial motions seeking dismissal of the Indictment, a judgment of acquittal, or a new trial.  In their Motion for Judgment of Acquittal or, in the Alternative, for New Trial ("Motion for Judgment or New Trial") [Doc. Nos. 126 & 130],[2] Defendants argued that the evidence was insufficient to sustain their convictions.  In their "Motion to Dismiss or, Alternatively, for an Order Granting a New Trial" ("Motion to Dismiss or for New Trial") [Doc. Nos. 123 & 129],  Defendants argued that they were entitled to a new trial because the Government withheld discoverable evidence regarding allegations made by Hakim's former employee, Blake Deshotels ("Deshotels"), that Hakim had committed tax fraud and evasion and that the IRS conducted a primary criminal investigation of Hakim based on these allegations.   Among other claims, Deshotels alleged that Hakim sold property in Houston, Texas, in 2005, which would have resulted in substantial taxable gains, but that Hakim "used multiple fraudulent property transfers to evade the capital gains tax of over $2,000,000.00." [Doc. No. 123, Deshotels Affidavit ("Deshotels Aff."), p.3].  According to Deshotels, the Hakim family "took the majority of their

---

[2]Defendants have adopted each other's motions numerous times throughout this case.  For ease of reference, the Court refers to the motions as being filed by "Defendants," rather than differentiating which Defendant filed each motion.

property in Ouachita Parish including the farm at LoneWa, the Sherrouse Plantation Development property, the building on St. Charles and the old K-Mart building and 'sold' it to an employee named David. L. Moses." *Id.*  Deshotels further alleged that "Moses then 'sold' the property back to the Hakim brothers and Penny Realty[, a Hakim company]." *Id.*

On August 15, 2011, the Court held a hearing on Defendants' Motion to Dismiss or for New Trial.  The parties did not present witnesses, but stipulated to the testimony that the witnesses would have given.

On August 18, 2011, in support of the Motion to Dismiss or for New Trial, Co-Defendant Stevens filed an affidavit from a tax expert, David Gun, in the record. [Doc. No. 159].

On August 25, 2011, Stevens filed a Supplemental Memorandum in Support of Defendants' Motion to Dismiss or for New Trial.  [Doc. No. 162].

On September 1, 2011, the Government filed a Supplemental Response to the Motion to Dismiss or for New Trial.  [Doc. No. 164].

On September 14, 2011, the Court issued a Ruling and Order [Doc. Nos. 171 & 172], granting Defendants' Motion to Dismiss or for New Trial in part and otherwise denying Defendants' post-trial motions.  The Court rejected the Government's arguments that Defendants had failed to timely raise the issue of Deshotels' allegations. The Court then concluded that the Government had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose evidence favorable to the defense, that the evidence was material, and that Defendants did not receive a fair trial in the absence of this evidence.  Specifically, in the September 14, 2011 Ruling, the Court found that the Government agents involved in Defendants' prosecution had "shield[ed] themselves" from full knowledge of Deshotels' allegations against Hakim and, as a result, had "actual or constructive

4

possession of sufficient information to know that [they] had a duty to disclose favorable evidence to Defendants." [Doc. No. 171, p. 39]. This "[e]vidence of Deshotels' allegations and the IRS primary investigation would not have been cumulative of the other impeachment and bad reputation evidence offered against Hakim [because it] completely undercuts his portrayal of himself of an honest businessman seeking to right a wrong." *Id.* at pp. 39-40.

> The undisclosed information also demonstrates that Hakim had a reason to be biased, and the jury was improperly denied the opportunity to consider that bias . . . . [Hakim] was certainly aware of his own conduct in transferring property to an employee and then having that employee transfer the property back to Hakim, his two brothers, and another Hakim entity [the so-called Section 1031 transfer]. Thus, Hakim had motivation to assist the FBI with an investigation into public bribery and to deflect attention from himself. Defendants would have been able to offer extrinsic evidence of this bias at trial.

*Id.* at pp. 40-41. Finally, as a result of the Government's failure to disclose the information and evidence, Defendants were denied the opportunity to effectively cross-examine Hakim about his receipt of a benefit "of not having a personal or company audit performed by the IRS" and the possible benefit of "keeping a large sum [of] money which he and his companies were obligated to pay to the IRS." *Id.* at p. 41. Ultimately, "[g]iven the Government's reliance on Hakim's testimony and Defendants' defense of attacking Hakim's credibility, the Court [could not] say with confidence that Stevens and Gilmore received a fair trial in the absence of evidence of the Deshotel[s] allegations, the IRS primary investigation, and the benefit conferred on Hakim by the IRS." *Id.* at p. 42. Thus, the Court vacated Defendants' convictions and ordered a new trial.

On October 26, 2011, the Government filed a Motion to Reconsider. [Doc. No. 193].

On November 28, 2011, Stevens filed a Response to the Government's Motion to Reconsider Grant of New Trial. [Doc. No. 207].

On November 29, 2011, the Court granted Gilmore's Motion to Adopt Post-Trial Motions, Exhibits, and Memoranda of Co-Defendant. *See* [Doc. No. 208].

On December 12, 2011, the Government filed a reply memorandum in support of its Motion to Reconsider. [Doc. No. 211].

On January 11-12, 2012, the Court held a hearing on the Government's Motion to Reconsider. The Government presented testimony from (1) Myra Hale, an employee of the Hakim company, Control Services; (2) David Moses, an employee of Control Services, a family friend of the Hakims, and the person to and from whom alleged improper property transfers were made; (3) Hakim; (4) Joseph Hakim, Hakim's brother and an employee of Control Services; (5) Joe D. Guerriero, Hakim's in-house counsel; (6) Steve Pickering, Hakim's in-house accountant; (7) Bubba Via, Hakim's outside accountant; (8) Jay Hopper, Moses' friend and local restauranteur; and (9) IRS Agent Jude Armand. Defendants did not present any witnesses. At the conclusion of the hearing, the Court took the Government's Motion to Reconsider under advisement.

On January 17, 2012, with leave of Court, the Government filed a supplemental affidavit from Agent Armand. [Doc. No. 222].

On March 29, 2012, the Court issued a Ruling [Doc. No. 225] and Order [Doc. No. 226] granting the Government's Motion to Reconsider. After reviewing the additional evidence and testimony presented at the January 11-12, 2012 hearing, the Court concluded that the Government's *Brady* violation did not result in the suppression of material evidence. Specifically, the Court found that Hakim had no motivation to assist the FBI if he had no reason to fear consequences as a result of the Section 1031 exchange. If the IRS could not find that Hakim engaged in intentional wrongdoing, in part because Hakim acted on the advice of his accountant, a former IRS agent, then

the Court found that Deshotels' allegations would only be a cumulative attack on Hakim's credibility and reputation, this time by a disgruntled former employee, instead of adversarial political figures.

Further, the Court found that neither Defendant suffered a due process violation because of the Government's failure to disclose the IRS' delay in referring Hakim's case to the civil division. Since neither the Assistant United States Attorney, the FBI, nor Hakim knew of the IRS' action, Hakim was not asked about it at trial.  Rather, Hakim testified truthfully that no one with the Louisiana State Police, the FBI, the U.S. Attorney's Office, or the state district attorney's office had made him any promises or given him any assurances as to whether he might be prosecuted for giving bribes.

While the Court was and is disturbed that the IRS chose to delay a civil audit of Hakim because of his status as an FBI witness and apparently had no intention of conducting a civil audit of his brothers or Penny Realty, the evidence suggests that an IRS civil investigation would have revealed only that the statute of limitations had run on Hakim's failure to pay taxes on his portion of the difference between the price of the sale of the Houston property and the purchase of the Section 1031 exchange property.  In the Court's opinion, such evidence was not material and did not justify a new trial.

Finally, the Court rejected Defendants' argument that Hakim and Joseph Hakim testified falsely about their development of the Sherrouse Plantation subdivision.  The Indictment alleged that Gilmore committed an act of racketeering by agreeing to help Hakim "with specific matters coming before the City of Monroe" in return for a "reduced purchase price" for a lot in the undeveloped Sherrouse Plantation subdivision. [Doc. No. 1, pp. 5-6].  Hakim's brother, Joseph, testified that the subdivision had been in development since the late 1990s, and both Hakim brothers testified that the

7

purchase of the two pieces of Desiard Street property on September 30, 2004, was the beginning of the land acquisition. Hakim described the development as an exclusive subdivision, and he testified that the lot Gilmore offered to buy for $5,000-$10,000 would actually be sold for approximately $175,000.

Gilmore addressed Hakim's claims by testifying that he lived very near the Sherrouse Plantation subdivision development, that he was familiar with the area, and that his offer on the lot was a fair value. His attorney also thoroughly cross-examined Hakim about the price that he paid for the raw land, the fact that the subdivision still had not been developed three years after the alleged bribe, and the fact that he had not sold all the lots in Maison Orleans, another Hakim subdivision upon which he based the Sherrouse Plantation lot prices.

All parties and the Court now know that in May 2005, a Hakim company, Northeast Realty, sold the same two pieces of Desiard Street property that began the land acquisition for the subdivision to a Hakim employee, Moses, for the same price Northeast Realty had paid in September 2004. The Hakims were aware that Moses wanted to expand the existing trailer park on one piece of property and to build ballfields and concession stands on the other piece of property. The parties and the Court are also aware that Moses never paid a single dollar on the purchase of these properties. Eight months later, in January 2006, Moses sold these same two pieces of property back to the Hakims for the same price.

The Court concluded that this new evidence would have been useful to Gilmore, but there was no reasonable probability that it would have affected the jury's judgment.

Following the Court's granting of the Government's Motion to Reconsider, a sentencing hearing was held on April 16, 2012. Gilmore was sentenced to a term of imprisonment of 41 months

on Counts 1 and 2, to run concurrently.  He was ordered to report to the facility designated by the Bureau of Prisons by June 11, 2012.

On the date of sentencing, April 23, 2012, Gilmore filed a Notice of Appeal [Doc. No. 249] and Motion for Bail Pending Appeal [Doc. No. 250].  On April 25, 2012, the Government filed a memorandum in opposition to Steven's motion.

## LAW AND ANALYSIS

Under 18 U.S.C. § 3143(b), a person who has been convicted of or pled guilty to an offense and sentenced may not be released pending appeal unless he establishes the following four factors:

(1)     that he is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2)     that the appeal is not for purposes of delay;

(3)     that the appeal raises a substantial question of law or fact; and

(4)     that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal, in an order for a new trial, in a sentence without imprisonment, or in a sentence with reduced imprisonment.

*United States v. Clark*, 917 F.2d 177, 179 (5th Cir. 1990) (interpreting 18 U.S.C. § 3143(b)).  A substantial question is one "that is 'close' or 'that could very well be decided the other way' by the appellate court."  *Id.* at 180 (internal citations omitted).

The Court agrees with Gilmore that he does not pose a flight risk or a danger to others and that his appeal has not been taken for the purpose of delay.

Further, Gilmore appeals three issues, and a decision by the United States Court of Appeals for the Fifth Circuit in Gilmore's favor on any of the issues is likely to result in "an order for a new trial," or a reversal.  18 U.S.C. § 3143( b)(4).  The real issue before the Court is the third factor:

whether Gilmore's appeal raises a substantial question of law or fact.

Gilmore states in his motion that he will raise the following three substantial questions of law or fact: "(A) Reversal of Granting a New Trial; (B) Sufficiency of the Evidence; and (C) Denial of Motion to Sever."  [Doc. No. 250, ¶ 7].  He also points out that if a "below guidelines sentence [is] granted, as requested, the reduced term of imprisonment could be less than the exten[d]ed duration of the appeal process." *Id.*  Gilmore does not attempt to re-argue the sufficiency of the evidence or the severance issues, as they have been fully briefed.  With regard to the reversal of the new trial, Gilmore argues that "there is no question that the issues surrounding the granting and subsequent denial of a new trial is a 'close one' or 'one that could be decided either way,'" given the fact that the issue of a new trial was "decided both ways." [Doc. No. 250, ¶ 9].

In response, the Government argues that there is a presumption against release pending appeal, and Gilmore has failed to meet his burden under the third factor of demonstrating a substantial question of law or fact.  With regard to the reversal of the new trial, the Government contends that Gilmore has discounted the standard of review that will be used by the Fifth Circuit.  The Fifth Circuit reviews the denial of a motion for a new trial for abuse of discretion,  but considers alleged *Brady* violations *de novo,* giving deference to the "factual findings underlying the district court's decision." [Doc. No. 252, p. 4 (quoting *United States v. Turner*, 674 F.3d 420, 428 (5th Cir. 2012)].  While the Court's initial ruling on Defendants' Motion to Dismiss or for New Trial was based strictly on legal grounds, the Government argues that the Court's granting of its Motion to Reconsider was based on an analysis of all the factual evidence, and, under the deferential standard applied by the Fifth Circuit, the Court's ruling will be upheld.  With regard to the sufficiency of the evidence, the Government points out that the Court's September 14, 2011 Ruling [Doc. No.  171]

"exhaustively detailed each argument raised by Defendants . . . ., rejecting each one." [Doc. No. 253, p. 6].  With regard to the severance issue, the Government argues that Gilmore cannot demonstrate "'compelling prejudice against which the trial court was unable to afford protection, and that he was unable to obtain a fair trial.'" *Id.* at p. 7 (quoting *United States v. Whitfield*, 590 F.3d 325, 355 (5th Cir. 2009) (other citation and internal quotation marks omitted))].

As Gilmore points out, the Court has, indeed, struggled with many aspects of this case.  On the questions of sufficiency of the evidence and severance, the Court finds that Gilmore has failed to establish that there is a substantial issue of law or fact.  With regard to the Court's reversal of its order of new trial, however, the Court agrees with Gilmore that he has demonstrated there is a substantial issue of law or fact.  In its Motion to Reconsider, the Government did not contest the Court's determination in the ruling on the Motion to Dismiss or for New Trial that the Government withheld discoverable evidence, in violation of *Brady*.  Instead, the Government argued that no "'real'" *Brady* violation occurred because there is no "'reasonable possibility that the suppressed evidence would have produced a different verdict.'" [Doc. No. 193 (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999))].[3]  On appeal, regardless of the standard applied, the Court finds that it is a close question whether the Government's *Brady* violation resulted in the suppression of material evidence and warranted a new trial.

## CONCLUSION

For the foregoing reasons, Gilmore's Motion for Bail Pending Appeal [Doc. No. 250] is GRANTED.   Gilmore shall remain free on a personal recognizance bond pending the outcome of

---

[3]The Court offers no opinion as to whether the Government has waived this issue for appeal.

his appeal to the Fifth Circuit.

MONROE, LOUISIANA, this 3rd day of May, 2012.


_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE